**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CALVIN W. SCOTT, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:14-CV-1039-RWS |
| ROBERT BENTLY, *et al.*, : | |
| : | |
| Defendants. : | |

**ORDER**

This case comes before the Court on Defendants' Motions to Dismiss [4, 7, 8, 24, 26]; Plaintiff's Motion for Partial Summary Judgment [15]; Plaintiff's Motion to Void the State Court's Judgment Due to Fraud on the Court [18]; Plaintiff's Motion for Clarification of Venue [27]; Plaintiff's Motion for an Expedited Order to Show Cause [30]; Plaintiff's Ex Parte Motion and Declaration for an Expedited Hearing [31]; Plaintiff's Motion for Leave to File a Second Motion to Amend Complaint to Add Additional Defendants [36]; Plaintiff's Ex Parte Motion to Lift Stay of Discovery [37]; Plaintiff's Motion to Lift Stay of Discovery [38]; Plaintiff's Motion to Amend Jurisdiction [39]; Plaintiff's Motion to Compel Production [40]; and Plaintiff's Notice of, and

Motion for Summary Judgment, and Request for Sanctions [41]. After reviewing the record, the Court enters the following Order.

## Background

Plaintiff Calvin Scott filed this action seeking to recover benefits against numerous Defendants, including Governor Robert Bentley of Alabama; Judge James Woodroof of the Limestone County, Alabama Circuit Court; Lucile B. Scott, Plaintiff's former wife; Donald L. Dixon, a human resources supervisor; the U.S. Office of Personnel Management ("OPM"); the Federal Retirement Thrift Investment Board ("FRTIB"); Redstone Federal Credit Union; and Joseph Newberry, Chief Executive Officer of Redstone.[1]

Plaintiff alleges Defendants are denying him federal retirement benefits to which he is entitled as a former spouse of a federal employee. (Compl., Dkt. [1] at 6.) During Plaintiff's divorce from Defendant Lucile Scott, Plaintiff moved from Huntsville, Alabama, to Atlanta, Georgia. (Id.) By late March 2012, Plaintiff had not received notice of a hearing related to his divorce, so he

---

[1] According to Defendants, Plaintiff misnames Governor Bentley as "Bently" and Judge Woodroof as "Woodruff." Plaintiff also names the "U.S. Office of Personnel" and the "Thrifty Savings Plan" as Defendants. The federal Defendants assert that the proper Defendants are the Office of Personnel Management and the Federal Retirement Thrift Investment Board, which manages the Thrift Savings Plan.

2

contacted the court and found out that a hearing had already been held. (Id.) Judge Woodroof entered the final judgment of divorce on April 18, 2012. (Dkt. [1-1] at 7.) Plaintiff alleges that Judge Woodroof abused his authority by denying Plaintiff his request for division of Ms. Scott's retirement benefits. The court apparently dismissed Plaintiff's claim for alimony and retirement benefits as a sanction for his failure to appear at a hearing or to provide required discovery responses. (See id.) Plaintiff asserts that Judge Woodroof's decision violated provisions of the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), and the Spouse Equity Act of 1984, in addition to violating due process of law. While Plaintiff names numerous other Defendants, his Complaint primarily details the errors he believes Judge Woodroof made in issuing the divorce decree.

Plaintiff filed this action *pro se* on April 9, 2014. Defendants filed motions to dismiss based on lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction, and failure to state a claim. On June 2, 2014, the Court stayed proceedings until it ruled on the pending motions. However, Plaintiff continued to file motions, which the Court will not consider in this Order in light of the stay.

3

## Discussion

**I.   Motions to Dismiss for Lack of Personal Jurisdiction [4, 7, 8]**

"As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims." Republic of Panama v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 940 (11th Cir. 1997). Because Defendants challenge the Court's personal jurisdiction over them, the Court must resolve this issue before turning to the merits because "[a] defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." Id.

On a motion to dismiss for lack of personal jurisdiction, "[t]he district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). Because Plaintiff is proceeding *pro se*, his "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise

deficient pleading in order to sustain an action." Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 637 (11th Cir. 2010).

A federal court properly may exercise personal jurisdiction over out-of-state defendants "only if two requirements are met: (1) the state long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment." Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999). Thus, the Court uses a "two-step inquiry in determining whether the exercise of personal jurisdiction over a non-resident defendant is proper." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). First, courts must consider whether the exercise of personal jurisdiction of the defendant would comport with Georgia's long-arm statute. Id. If so, courts then consider whether the defendant has sufficient minimum contacts with the state such that the exercise of jurisdiction would not offend due process notions of "fair play and substantial justice." Id. (citation omitted). Finally, " '[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient *facts* to make out a prima facie case of jurisdiction.' " Scutieri v. Chambers, 386 F. App'x 951, 956 (11th Cir. 2010) (emphasis in

5

original) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).

Under the relevant portion of the Georgia long-arm statute,

A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action *arising from any of the acts . . .* enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or though an agent, he or she:

(1) Transacts any business within this state . . . .

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state

(4) Owns, uses, or possesses any real property situated within this state;

(5) With respect to proceedings for divorce, . . . maintains a matrimonial domicile in this state at the time of the commencement of this action or if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. . . . ; or

(6) Has been subject to the exercise of jurisdiction of a court of this state which has resulted in an order of alimony, child

6

> custody, child support, equitable apportionment of debt, or equitable division of property if the action involves modification of such order and the moving party resides in this state . . . .

O.C.G.A. § 9-10-91 (emphasis added).

Plaintiff fails to establish that any of the non-federal Defendants are subject to personal jurisdiction in Georgia under any of the prongs of Georgia's long-arm statute. All Defendants' actions, to the extent any are alleged, took place in connection with divorce proceedings that occurred in the Limestone County Circuit Court. Thus, even if Defendants maintained any contacts with Georgia, none of those contacts relate to Plaintiff's cause of action. In any event, Plaintiff does not allege that Defendants transact business in Georgia or committed any torts within the state. Assuming Plaintiff alleges that Defendants committed a tortious injury within Georgia caused by an act outside the state, the long-arm statute requires that Defendants regularly conduct or solicit business in Georgia, engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Georgia. Plaintiff fails to allege that Defendants meet any of these requirements. Furthermore, Plaintiff's cause of action does not arise from any

7

property owned by Defendants in Georgia.  Finally, with respect to subsections (5) and (6), this is not a proceeding for divorce, and no Defendant has been subject to the jurisdiction of a Georgia court resulting in a domestic relations order.  Accordingly, the Court lacks personal jurisdiction over Defendants Scott, Bentley, Woodroof, Redstone, and Newberry.

## II.     OPM and FRTIB's Motion to Dismiss for Improper Venue [24, 26]

Defendants OPM and FRTIB argue that venue is improper.[2]  "Once a defendant challenges venue through a Rule 12(b)(3) motion, the burden is on the plaintiff to show that venue in the forum is proper."  Centaur v. Prisoner Transp. Servs. of Am., No. 1:12-CV-2626-TWT, 2013 WL 5614303, at *1 (N.D. Ga. Oct. 11, 2013) (citation omitted) (internal quotation marks omitted).  Defendants note that the FRTIB is the federal agency responsible for administering the Thrift Savings Plan, the entity Plaintiff names in his Complaint.  (See OPM & FRTIB's Br., Dkt. [26] at 5-6.)  Suits concerning the

---

[2]Defendants also initially argued that Plaintiff had not properly served the OPM or FRTIB but later withdrew this argument in their Corrected Motion to Dismiss [26] when they determined that Plaintiff had served all appropriate entities.  Because the OPM and FRTIB filed a Corrected Motion to Dismiss [26], their earlier Motion to Dismiss [24] is **DENIED as moot**.

8

Thrift Savings Plan are governed by 5 U.S.C. § 8477. This statute includes a specific venue provision:

> An action under this subsection may be brought in the District Court of the United States for the District of Columbia or a district court of the United States in the district where the breach alleged in the complaint or petition filed in the action took place or in the district where a defendant resides or may be found.

5 U.S.C. § 8477(e)(7)(B).

According to Defendants, because the divorce proceedings and alleged breach occurred in Alabama, venue would not lie in the Northern District of Georgia. Furthermore, all the individually named Defendants reside in Alabama. And, because the main offices of the OPM and FRTIB are located in Washington, D.C., Defendants assert that they are not "found" in the Northern District of Georgia. (See OPM & FRTIB's Br., Dkt. [26] at 7.)

Plaintiff does not respond to Defendants' venue arguments but instead reiterates his allegations that Judge Woodroof violated numerous laws in issuing the divorce decree. (See generally Pl.'s Resp., Dkt. [33-1].) The Court, for its part, can locate only one case applying the venue provision in 5 U.S.C. § 8477(e)(7)(B). In Gill v. Federal Retirement Thrift Investment Board, a plaintiff sued claiming that she was the beneficiary under a decedent's Thrift

9

Savings Plan. No. 2:11-cv-0351-GDB-KJN, 2011 WL 2946379, at *1 (E.D. Cal. July 21, 2011). The plaintiff divorced the decedent several years before his death. Following his death, the FRTIB could not locate a designation of beneficiary form and thus determined that the funds in the decedent's account would be paid in accordance with the statutory order of payment. Id. The decedent, however, did not have a surviving spouse, living children, or surviving parents. Id. The plaintiff alleged that she was a named beneficiary and that the FRTIB failed to keep accurate records. Id.

The FRTIB, citing 5 U.S.C. § 8477(e)(7)(B), argued that the suit should be dismissed for improper venue because it did not reside and was not found in the Eastern District of California. See id. at *2. The plaintiff responded that venue was proper because the beneficiary form was lost in Sacramento, which is in the Eastern District of California. Id. at *3. The court found, on the other hand, that the plaintiff failed to "demonstrate that Defendant had possession of the referenced beneficiary form in California, or otherwise breached any obligation concerning the referenced beneficiary form in California." Id. Furthermore, the FRTIB submitted an affidavit showing that it operated one office located in Washington, D.C. Id. The court then rejected the plaintiff's

10

argument that venue was proper because the beneficiary designation form was executed in Sacramento, the decedent died in California, and the plaintiff resided in California, holding that those arguments were not bases for venue under 5 U.S.C. § 8477(e)(7)(B).  Id.

Like in Gill, Plaintiff here fails to carry his burden to show that venue in the Northern District of Georgia is proper.  Plaintiff alleges no facts showing that the FRTIB or OPM can be found in Georgia, while Defendants assert that the Court may take judicial notice that the main offices of the OPM and FRTIB are located in Washington, D.C.  See http://www.opm.gov/about-us/contact-us/; http://www.frtib.gov/contacts.html.  In addition, Plaintiff does not allege that the breach occurred in the Northern District of Georgia, as all divorce proceedings took place in Alabama.  There is thus no basis for laying venue in the Northern District of Georgia.

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  So, rather than dismissing the case for lack of personal jurisdiction and improper venue, the Court has discretion to transfer

11

the case. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."). The Court finds that it is in the interest of justice to transfer the case instead of dismissing it because Plaintiff is proceeding *pro se* and has paid the filing fees. Transfer would therefore save Plaintiff time and expense in refiling this action. See Stallings v. Hoffman, No. 1:14-cv-806-WSD, 2014 WL 2040101, at *2 (N.D. Ga. May 12, 2014) (finding that it was in the interest of justice to transfer a case brought in the wrong district because a *pro se* plaintiff "likely does not known the venue laws").

Defendants show that this action could have originally been brought in the Northern District of Alabama because that appears to be where most of the Defendants reside. (See Bentley & Woodroof's Br., Dkt. [7] at 22 n.4.) Moreover, as explained above, under the venue provision related to suits concerning the Thrift Savings Plan, venue is proper where the alleged breach occurred or where any defendants reside. See 5 U.S.C. § 8477(e)(7)(B). Accordingly, venue under 5 U.S.C. § 8477(e)(7)(B) is also proper in the

12

Northern District of Alabama because that is where the divorce proceedings leading to the alleged breach were adjudicated. For these reasons, the Court **GRANTS** Defendants' motions to dismiss, construed as motions to dismiss or to transfer,[3] based on lack of personal jurisdiction and improper venue.

## Conclusion

For the foregoing reasons, Defendant OPM and FRTIB's Motion to Dismiss [24] is **DENIED as moot**, while Defendants' motions to dismiss [4, 7, 8, 26], construed as motions to dismiss or to transfer, are **GRANTED**. The Clerk is **DIRECTED TO TRANSFER** the entire case to the Northern District of Alabama. All other pending motions are reserved for consideration by the district judge assigned to the case in the Northern District of Alabama.

**SO ORDERED**, this   6th   day of January, 2015.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

---

[3]Defendants Bentley and Woodroof expressly sought transfer in the alternative.

14