# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CALVIN W. SCOTT,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:15-CV-00056-MHH |
| } | |
| **JAMES WOODROOF, Judge** } | |
| **Limestone County, and THE** } | |
| **THRIFT SAVINGS PLAN,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION AND ORDER

This memorandum opinion discusses *pro se* plaintiff Calvin Scott's claims against Alabama Circuit Court Judge James Woodroof. In his second amended complaint, Mr. Scott alleges that while Judge Woodroof was presiding over Mr. Scott's divorce action in Limestone County, Alabama, Judge Woodroof denied his (Mr. Scott's) rights under the Due Process Clause and violated the Americans with Disabilities Act (ADA). (*See* Doc. 79, pp. 2-3, 5, 11-12, 17-18).[1] During a September 8, 2016 telephone conference in this action, the Court gave Mr. Scott an opportunity to clarify his claims. (*See* Doc. 127, p. 1, n. 2). Mr. Scott explained that with respect to Judge Woodroof, he seeks to be made whole pursuant to 42

---

[1] Mr. Scott's second amended complaint is the operative complaint in this matter. (*See* Doc. 127, p. 3).

U.S.C. § 1983 and the ADA. Relying on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Judge Woodroof has moved to dismiss Mr. Scott's § 1983 and ADA claims. (Doc. 81). As explained below, the Court does not have subject matter jurisdiction over Mr. Scott's § 1983 claim, and Judge Woodroof is immune from Mr. Scott's ADA claim for damages. Therefore, the Court will dismiss Mr. Scott's § 1983 and his ADA claim for damages against Judge Woodroof.

## I. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) enables a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A defendant may present either a facial or a factual challenge to subject matter jurisdiction. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). If it is apparent from the face of the complaint that the plaintiff has pled facts that confer subject matter jurisdiction under a statute, then a court must deny a defendant's 12(b)(1) motion. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). In conducting a facial analysis, a court must take the allegations of the complaint as true. *Houston*, 733 F.3d at 1335. In contrast, when a defendant mounts a factual challenge to subject matter jurisdiction, a district court may consider extrinsic evidence and weigh the facts to determine whether it may exercise jurisdiction. *Houston*, 733 F.3d at 1336.

**B.     Rule 12(b)(6) Standard**

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement needs only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not

significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Id.*

This is particularly true with respect to *pro se* complaints. Courts must liberally construe *pro se* documents. *Erickson*, 551 U.S. at 94. "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d 1262 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, the Court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).

## II.   FACTUAL BACKGROUND

On December 29, 2010, Mr. Scott filed an action for divorce in the Circuit Court of Limestone County, Alabama, in a case styled *Calvin Scott v. Lucille Scott*, DR-2010-900020.00.  (Doc. 2 in DR-2010-900020.00).[2]   Initially, counsel represented Mr. Scott in the divorce proceeding.  (*See e.g.*, Docs. 2, 36 in DR-2010-900020.00; *see also* December 29, 2010 and July 28, 2011 docket entries in DR-2010-900020.00 listing attorneys for Mr. Scott).  In November 2011, while Mr. Scott still was represented by an attorney, Judge Woodroof set the *Scott* divorce case for trial on March 19, 2012.  (Doc. 48 in DR-2010-900020.00). Eventually, Judge Woodroof allowed Mr. Scott's attorneys to withdraw.  (Docs. 32 and 62 in DR-2010-900020.00).  By early 2012, Mr. Scott was proceeding *pro se* (without counsel) in his divorce action.  (*See* February 21, 2012 docket entry in DR-2010-900020.00 listing attorney for Mr. Scott as "PRO SE").

On February 17, 2012, Mr. Scott submitted a motion to "Request [] A Postponement For Medical Reasons."  (Doc. 74 in DR-2010-900020.00).[3]  In the

---

[2] Mr. Scott's second amended complaint mentions this state court action.  (*See* Doc. 79, pp. 2-5, 11, 17-18).  The record for the state court action is available on the Alacourt website.  The Court takes judicial notice of that record.  *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted).  The Court cites to entries on the Alacourt case action summary by document and case number.

[3] The state court clerk docketed the motion on February 21, 2012.

motion, Mr. Scott "request[ed] [] postponement of further action" in his divorce action "because the judge told [Mr. Scott that he] should have l;egal [sic] counsel." (Doc. 74 in DR-2010-900020.00). The motion continues:

> Plaintiff have [sic] been under treatment of this disorder since he was injured in the line of duty in a riot while working as a correctional officer the plaintiff was attacked by two [C]uban detainees with razors while working[] in the Special Housing Unit (SHU) on 11/06/1984 the plaintiff discussed what the judge had told him with his current psychiatrist on 02/08/12 Scarya Kumar, 219 Longwood Dr. Huntsville, [A]labama on 02/08/2012 and was advised the plaintiff that the judge was right, and [] even [] though the situation in the home it would be in the plaintiff[']s best interest to obtain legal representation, because that a divorce after 35 yrs., and a[t] the age of 60 the plaintiff will need medical insurance to pay for care that is not a part of the workers compensation claim.

(Doc. 74 in DR-2010-900020.00).[4]

On February 21, 2012, the state court clerk docketed a letter regarding Mr. Scott that the clerk received from Dr. Scariya Kumaramangalam.[5] The letter is dated February 8, 2012. (Doc. 75 in DR-2010-900020.00). The letter states: "To whomever it may concern: This patient is under my psychiatric care suffering from major depression and Post Traumatic Stress Disorder. He is emotionally not ready to face divorce hearing on 2/9/12." (Doc. 75). Mr. Scott alleges that this

---

[4] The motion also contains information related to Mr. Scott's workers' compensation benefits. (Doc. 74, ¶¶ 3-5 in DR-2010-900020.00).

[5] The letter is stamped filed on February 17, 2012. A February 17, 2012 entry on the state court docket states "SCANNED – LETTER," but there is no document associated with the February 17, 2012 docket entry.

letter put Judge Woodroof on notice that he (Mr. Scott) "was no longer capable of representing himself at trial." (Doc. 79, p. 17, ¶ 41).

Judge Woodroof did not respond to Mr. Scott's request to continue the divorce proceedings. (Doc. 79, p. 17, ¶¶ 40-41). Judge Woodroof called the *Scott* divorce case for trial on March 19, 2012. (*See* Doc. 89 in DR-2010-900020.00).[6] On March 26, 2012, Mr. Scott moved to the Atlanta area, and he filed a notice of change of address with the United States Postal Service. (Doc. 79, p. 8, ¶ 23). The state court docket does not contain a notice of change of address. Mr. Scott did not receive information from the state court for several weeks. (Doc. 79, p. 8, ¶ 23).

On April 18, 2012, Judge Woodroof issued a final order of divorce. (Doc. 89 in DR-2010-900020.00; *see also* Doc. 93, pp. 27-30). Mr. Scott received a copy of the final order of divorce from his ex-wife. (Doc. 79, p. 8, ¶ 23). The order awarded to Mr. Scott "all and exclusive right, title and interest in and to all bank accounts and all other accounts, financial assets, entitlements and benefits in his [] sole name. . . ." (Doc. 93, p. 28).[7] The order also awarded to Mr. Scott half of the proceeds from the sale of the marital residence and property. (Doc. 93, p.

---

[6] It is unclear from the state court docket whether a hearing took place on February 9, 2012. A February 9, 2012 docket entry states "OTHER/NO ACTION." The final order of divorce states that a hearing was held on February 9, 2012. (Doc. 93, p. 28).

[7] Likewise, the order awarded to Ms. Scott "all and exclusive right, title and interest in and to all bank accounts and all other accounts, financial assets, entitlements and benefits in [] her sole name. . . ." (Doc. 93, p. 28).

28).[8] The order awarded to Mr. Scott certain personal property and two vehicles. (Doc. 93, pp. 28-29).[9] The order did not award Mr. Scott a portion of his ex-wife's retirement benefits. (Doc. 93, p. 27). Instead, the order states that each spouse shall keep his or her respective retirement benefits. (*See* Doc. 93, p. 28).

Mr. Scott appealed the final order of divorce to the Alabama Court of Civil Appeals. (Doc. 81-2; Doc. 91 in DR-2010-900020.00). The Alabama Court of Civil Appeals dismissed Mr. Scott's appeal for failure to prosecute because Mr. Scott did not pay either the trial court clerk for the clerk's record or the court reporter for the transcript. (Doc. 81-3; Doc. 94 and Doc. 95 in DR-2010-900020.00).

Mr. Scott then filed this lawsuit.[10] He alleges that Judge Woodroof wrongfully withheld from him federal spousal retirement benefits, issued other

---

[8] The order awarded Ms. Scott "all right, title and interest in and to the parties' marital residence and property" and required Ms. Scott to maintain the mortgage, taxes, and interest on the property until the property is sold. The order instructed Mr. Scott to sign a deed evidencing the award of the marital residence to his ex-wife. (Doc. 93, p. 28). The order also instructed Mr. Scott to remove his personal property from the marital residence within 31 days of entry of the final order of divorce and authorized law enforcement to assist if Mr. Scott did not comply. (Doc. 93, p. 28).

[9] The order awarded to Ms. Scott other personal property and two different vehicles. (Doc. 93, p. 29). With respect to personal property, the order states that "[Mr. Scott] is awarded the personal property set out on the attached Exhibit 'A.'" (Doc. 93, p. 28; *see also* Doc. 89, p. 3 in DR-2010-900020.00). The order stated that "[Ms. Scott] is awarded the personal property set out on the attached Exhibit 'B.'" (Doc. 93, p. 28). The Court has not located either "Exhibit A" or "Exhibit B" in the state court record or in the electronic record in this action.

[10] Mr. Scott initially filed suit in the United States District Court for the Northern District of Georgia. (Doc. 1). On January 6, 2015, Judge Richard Story entered an order transferring the action to this Court. (Doc. 44).

"coercive" orders, and held a divorce trial without ruling on Mr. Scott's motion for a continuance or ordering a mental competency evaluation. (Doc. 79; transcript of September 8, 2016 telephone conference).

Mr. Scott attached to his submissions in this case a number of medical records that he did not submit to Judge Woodroof before or after Judge Woodroof entered a final order of divorce. (*See* Doc. 93, pp. 13, 18-26, 31-32). Mr. Scott's second amended complaint in this action also adds additional detail regarding his medical condition that he did not include in his motion for a continuance that he filed before Judge Woodroof:

> [T]he plaintiff requested a continuance for mental health reasons, in the proceedings, while the plaintiff sought further psychiatric treatment for his condition because, as a Federal employee injured on duty, the U.S. Department of Labor Office of Workers Compensation, took over, and scheduled the plaintiff for a battery of test[s], mental, and physical evaluations. Some of these evaluations were in other cities, and the psychological evaluation was scheduled in Nashville Tennessee, with Dr. Casey Ar[n]ey, and during the evaluation doctor Arney felt that the situation in the plaintiff's home was potentially explosive, and that the plaintiff should try to stay away from conflict with his wife. That was [t]he reason why the plaintiff relocated to Atlanta[,] Georgia, because of his lack of financial means, the plaintiff went to live with a friend.

(Doc. 79, pp. 7-8, ¶ 21). Mr. Scott did not file a post-judgment Rule 60(b) motion in state court or otherwise present this supplemental medical information to Judge Woodroof for consideration.

On this record, the Court considers Judge Woodroof's motion to dismiss.

## III. ANALYSIS

### A. The Rooker-Feldman Doctrine Bars Mr. Scott's § 1983 Claim.

"The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). "The doctrine applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." *Id.* "A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th. Cir. 2001) (internal citation omitted). "However, even if a claim is 'inextricably intertwined' with the state court's judgment, the [*Rooker-Feldman*] doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" *Id.* (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)).

According to Mr. Scott, his action under § 1983 "is not an appeal of a divorce, instead it is an action to be made whole." (Doc. 101, p. 3; *see also* transcript of September 8, 2016 telephone conference). Mr. Scott seeks "monetary damages for Federal Civil Rights violations." (Doc. 116, p. 7). The Court understands that Mr. Scott is not trying to undo the divorce judgment, but binding

10

precedent requires the Court to focus "on the federal claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff." *Goodman*, 259 F.3d at 1333 ("The *Rooker-Feldman* doctrine is broad enough to bar all federal claims which were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court.").

In his second amended complaint, and as clarified during the September 8, 2016 telephone conference in this action, Mr. Scott alleges that Judge Woodroof denied his Constitutional right to due process when Judge Woodroof: (1) "issued an order barring payments of former spouse benefits to [Mr. Scott], from the OPM [Office of Personnel Management] in violation of Title 5 CFR; Sec. 828.236(a) which states that state courts lack[] the authority to order the OPM to delay, or not pay benefits," (2) "failed to respond to [Mr. Scott's] [] Motion for a Continuance for Medical Reasons, and when [Judge Woodroof] failed to order a mental competency evaluation of [Mr. Scott]," and (3) "issued a coercive order, ordering [Mr. Scott] to sign a Quit Claim deed transferring his interest in the marital home to his former wife, so that the home could be sold and the proceeds divided between [Mr. Scott] and [his] former wife." (Doc. 79, pp. 11, ¶¶ 29-30).[11]

---

[11] Relying on Mr. Scott's request for damages based on Judge Woodroof's failure to rule on the state court "Motion for a Continuance for Medical Reasons," Judge Woodroof argues that the Court should dismiss Mr. Scott's § 1983 claim because Mr. Scott cannot maintain a § 1983 claim

11

The first and third grounds for Mr. Scott's § 1983 claim are based on Mr. Scott's dissatisfaction with the manner in which Judge Woodroof divided martial property. Mr. Scott alleges that Judge Woodroof awarded "all of the marital property, bank accounts, Thrift Savings account, and retirement benefits to his former wife" and that he "was put [] out of his home after a 35 [year] marriage, at the age of 61 with nothing, thus requiring him to rely on the kindness of friends and family." (Doc. 79, p. 18, ¶ 42; Doc. 79, p. 20, ¶ 47). The final order of divorce did not leave Mr. Scott empty-handed. (*See supra* pp. 7-8). But even if it had, Mr. Scott's arguments concerning the way in which Judge Woodroof divided the marital assets "strike at the heart of the state court's proceedings" because Mr. Scott's § 1983 claim "succeeds only to the extent that the state court wrongly decided" how to divide the marital property. *Goodman*, 259 F.3d at 1332.

Mr. Scott's argument that Judge Woodroof violated Mr. Scott's due process rights when Judge Woodroof failed to respond to Mr. Scott's motion to continue or order a mental competency exam before holding a hearing regarding Mr. Scott's divorce petition also fails because Mr. Scott could have (and perhaps still could)

---

"'in lieu of – or in addition to – [an] ADA cause of action if the only alleged deprivation is the [plaintiff's] rights created by [] the ADA.'" (Doc. 128, pp. 3-4 quoting *Badillo v. Thorpe*, 158 Fed. Appx. 208, 213 (11th Cir. 2005)). Mr. Scott's § 1983 claim encompasses more than his complaint that Judge Woodroof failed to respond to the motion for a continuance. Mr. Scott's § 1983 claim also is based on Judge Woodroof's failure to order a mental competency evaluation and the manner in which Judge Woodroof divided certain marital property. Because Mr. Scott's § 1983 claim alleges deprivations of rights beyond those created by the ADA, the Court will not dismiss Mr. Scott's § 1983 claim on this ground.

present his due process arguments to the state court.  Alabama law permits litigants to raise constitutional challenges in state court.  *See e.g.*, *Davis v. Davis*, 183 So. 3d 976, 979 (Ala. Civ. App. 2015) (husband challenged in trial court and an on appeal denial of due process rights in divorce action); *Ex parte Montgomery*, 79 So. 3d 660, 670 (Ala. Civ. App. 2011) (reviewing on appeal a husband's argument that the trial court denied his due process rights in a divorce action by entering an order without affording the husband an opportunity to be heard).  Mr. Scott could have raised his due process argument when he appealed from the divorce judgment, and he could have filed a motion for post-judgment relief in the trial court.[12]

Therefore, pursuant to the *Rooker-Feldman* doctrine, the Court dismisses Mr. Scott's § 1983 claim.  *See Casale*, 558 F.3d at 1261 (holding that the *Rooker-Feldman* doctrine barred a complaint seeking to invalidate a state court contempt order issued as part of a divorce action and explaining that if the plaintiff "believed the state court's result was based on a legal error, the proper response was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal.").

---

[12] As discussed at page 8, *supra,* the Alabama Court of Civil Appeals ultimately dismissed Mr. Scott's appeal for lack of prosecution because Mr. Scott did not pay the trial court clerk for the clerk's record, and he did not pay the court reporter for the transcript.  (Doc. 81-3; Doc. 94 and Doc. 95 in DR-2010-900020.00).

### B. Mr. Scott's ADA Claim for Damages Fails Because Judge Woodroof is Entitled to Judicial Immunity.

Mr. Scott maintains that Judge Woodroof violated the ADA by failing to acknowledge or respond to his motion for a continuance, which Mr. Scott views as a request for an accommodation under Title II of the ADA. (Doc. 79, p. 8, ¶ 22). As relief for the alleged ADA violation, Mr. Scott seeks "to be made whole." (Doc. 100, p. 2; Doc. 101, p. 3; transcript of September 8, 2016 telephone conference). In other words, Mr. Scott's ADA claim is one for damages. (*See* Doc. 79, pp. 20-22). Resolution of Mr. Scott's ADA claim does not require the Court to determine if the "state court wrongly decided the issues before it." *Goodman*, 259 F.3d at 1332. Therefore, the *Rooker-Feldman* doctrine does not bar Mr. Scott's ADA claim. *See id.* However, Mr. Scott's ADA claim fails because Judge Woodroof is entitled to judicial immunity.

Title II of the ADA provides:

> Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the service, programs, or activities of a public entity, or be subject to discrimination by any entity.

42 U.S.C. § 12132. "To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in . . . or denied the benefits of the service, programs, or activities of a public entity or otherwise discriminated [against] by such entity;

(3) by reason for such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (internal quotation omitted) (alterations in original).  Assuming that Mr. Scott could state a Title II ADA claim against Judge Woodroof, Judge Woodroof is immune from Mr. Scott's ADA claim for damages.[13]

In the Eleventh Circuit, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (per curiam) (internal quotation marks and citations omitted).  "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Judicial immunity applies "even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin*, 225 F.3d at 1239 (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).  "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles*, 502 U.S. at 10 (quoting *Bradley v. Fisher*, 13 Wall. 335, 347 (1872)).

---

[13] At the pleading stage, the Court accepts as true Mr. Scott's allegation that he suffers from PTSD which is a disability within the meaning of the ADA and that Judge Woodroof failed to grant Mr. Scott's request for an accommodation. (*See* Doc. 79, p. 7, ¶ 20; Doc. 79, p. 8, ¶ 22).

The state court clerk assigned Mr. Scott's divorce action to Judge Woodroof, and Judge Woodroof was acting within his judicial capacity when he failed to respond to Mr. Scott's request to continue the divorce proceeding. Mr. Scott contends that Judge Woodroof violated the ADA because he failed to rule on a motion in a case that was pending before him. This omission is no less judicial simply because it constitutes a failure to act rather than an affirmative judicial decision. Implicitly acknowledging this point, Mr. Scott alleges that "[a]t all material times, Judge Woodroof . . . was wearing his official robe and sitting on the bench in a court room, and acting in the course and scope of his duties as an Alabama state circuit court judge." (Doc. 79, p. 11, ¶ 28). Accordingly, Judge Woodroof is immune from Mr. Scott's ADA claim for damages. *See Bolin*, 225 F.3d at 1239; *see also Badillo v. Thorpe*, 158 Fed. Appx. 208, 211 (11th Cir. 2005) (affirming dismissal of state court litigant's ADA claim against a circuit court judge because a "claim for money damages against [the judge] based upon the ADA [] is barred by the doctrine of judicial immunity").

Judicial immunity would not bar prospective injunctive relief against Judge Woodroof. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). However, in his second amended complaint, as clarified during the September 8, 2016 telephone conference, Mr. Scott does not seek to enjoin Judge Woodroof from refusing to accommodate a disability in the future, and Mr. Scott has not alleged facts that

16

plausibly suggest that Judge Woodroof would have an opportunity to violate Mr. Scott's rights under the ADA in the future. Conceivably, Mr. Scott may appear before Judge Woodroof again if he decides to file a post-judgment motion in state court; however, as it stands, the facts in Mr. Scott's second amended complaint do not sufficiently state a claim for prospective injunctive relief. Therefore, Mr. Scott's ADA claim against Judge Woodroof fails. *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) ("For a plaintiff seeking prospective relief to have standing, he 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'") (quoting *Johnson v. Bd. of Regents,* 263 F.3d 1234, 1265 (11th Cir. 2001)); *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) ("[W]here a plaintiff seeks prospective injunctive relief, [he] must demonstrate a 'real and immediate threat' of future injury. . . .") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103-04 (1983)).[14]

## IV. CONCLUSION

For the reasons explained above, the Court grants Judge Woodroof's motion to dismiss. The Court dismisses with prejudice Mr. Scott's § 1983 and his ADA claim for damages against Judge Woodroof.

---

[14] To the extent that Mr. Scott seeks injunctive relief, he seeks relief in the nature of an order vacating or amending the judgment from the Limestone County Circuit Court. (*See* Doc. 79, p. 21; Doc. 92; Doc. 93, pp. 27-30). As the Court explained during the September 8, 2016 telephone conference in this action, Mr. Scott must seek such relief before the state court. (*See* Doc. 127, p. 2).

The Court asks the Clerk to please mail a copy of this memorandum opinion and order to Mr. Scott.

**DONE** and **ORDERED** this September 22, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE