UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CALVIN W. SCOTT, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:15-CV-00056-MHH |
| } | |
| ROBERT BENTLEY, Governor of the } | |
| State of Alabama, et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This memorandum opinion discusses *pro se* plaintiff Calvin Scott's claim against the Federal Retirement Thrift Investment Board or FRTIB.[1] Mr. Scott contends that the FRTIB did not provide spousal notification when his wife withdrew funds from her Thrift Savings Plan or TSP account. Pursuant to Federal Rule of Civil Procedure 56, the FRTIB asks the Court to enter judgment as a matter of law in its favor on Mr. Scott's claim. As explained below, there is no genuine issue of material fact, and the FRTIB is entitled to judgment as a matter of law.

### I.   SUMMARY JUDGMENT STANDARD

---

[1] This is the only remaining claim in this action. The Court previously dismissed Mr. Scott's claims against the other defendants. (*See* Doc. 127; Doc. 131).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II. FACTUAL BACKGROUND

The Thrift Savings Plan is a tax-deferred retirement savings and investment plan for federal employees. The FRTIB administers the plan. (Doc. 133-1, ¶ 3). There are two categories of TSP participants: Civil Service Retirement System (CSRS, for short) participants and Federal Employees Retirement System (FERS, for short) participants. (Doc. 133-1, ¶ 4).[2]

---

[2] Individuals who started working for the federal government before January 1, 1987 are CSRS participants. Individuals who started working for the federal government after January 1, 1987 are FERS participants. (Doc. 133-1, ¶ 4). FERS participants receive matching contributions from

While they were married, Mr. Scott's wife, Lucile Scott, worked for the federal government, and she was a CSRS participant in the TSP. (Doc. 133-1, ¶ 6). On December 6, 2010, before Mr. and Ms. Scott divorced, Ms. Scott applied for a loan from her TSP account. (Doc. 133-1, ¶ 7). That same day, the FRTIB prepared written notice regarding Ms. Scott's loan application and addressed the notice to Mr. Scott at 24977 Southern Heritage L, Athens, AL 35613-8400. (Doc. 133-1, ¶¶ 7-8; Doc. 133-2, p. 2). The letter states:

> Dear Spouse of TSP Participant:
>
> According to our records, your spouse has requested a loan from his or her Thrift Savings Plan (TSP) account.
>
> By law, the TSP is required to notify you of your spouse's request. However, this notice does not guarantee or imply that you have a right to the money in your spouse's account or to any additional information about the account.
>
> This notice will not delay payment from the account.
>
> If you have questions, call the toll-free ThriftLine at 1-877-968-3773. Callers outside the United States and Canada should call (404) 233-4400 (not a toll-free number). The TSP's hours are Monday through Friday, 7 a.m. to 9 p.m., Eastern time. You can also write to the TSP. Please include your daytime telephone number and the participant's entire Social Security number on all correspondence. Note: If you are a member of the uniformed services, do not provide your Defense Switched Network (DSN) telephone number.

---

their employing agency. CSRS participants do not receive matching contributions; the only contributions to CSRS participants' TSP accounts are contributions from their salaries. (Doc. 133-1, ¶ 5).

(Doc. 133-2, p. 2). The written notice clearly is a form notice. The notice is not signed, and it does not indicate a mode of delivery. The FRTIB states that it sent the notice to Mr. Scott. (Doc. 133-1, ¶¶ 7-8). Mr. Scott asserts that he did not receive a copy of the December 6, 2010 letter. (Doc. 145, pp. 3, 7).

Mr. Scott contends that because Ms. Scott knew that FRTIB would not provide notice of her loan application, she felt comfortable hiding the loan a year later during the couple's divorce proceedings. Mr. Scott argues that the lack of notice from the FRTIB enabled Ms. Scott to lie about her financial situation in interrogatory responses that she provided during the divorce proceedings. (Doc. 145, pp. 2-4). Mr. Scott placed the interrogatory responses in the record. In answer to a question regarding her financial situation, Ms. Scott stated:

> I currently live paycheck to paycheck. I recently (December 2010) borrowed monies to pay for my daughter's funeral and now to defend myself in a divorce settlement. I borrowed the money from my TSP account. $256.00 is being deducted from my paycheck to repay the loan. I am currently paying off a loan for money borrowed to pay closing cost[s] for the sale of a house I cosigned with my son Nathan Scott to purchase. He could no longer pay the house note so we sold the house. As co-signer I was equally responsible for the expense and my son did not have the money or the credit to be able to borrow the money. I paid the closing cost. I also borrowed money to keep my son from being evicted from his apartment in Atlanta, GA (he moved to Atlanta December 2009). I am paying $283.50 a month [in] student loans for money borrowed to send my children to college. The current mortgage payment is $1,359.00 monthly.

(Doc. 138, p. 14). Ms. Scott signed the interrogatory responses; the responses are dated February 10, 2011. (Doc. 138, p. 15).

4

Mr. and Ms. Scott were divorced on April 18, 2012, when Limestone County, Alabama Circuit Judge James Woodroof entered a final judgment of divorce. (Doc. 131, p. 7; Doc. 133-1, ¶ 9; *see also* Doc. 89 in DR-2010-90020.00).[3] Ms. Scott made withdrawals from her TSP account in 2013 and 2014. (Doc. 133-1, ¶ 9). The FRTIB did not provide notice of these withdrawals to Mr. Scott because Mr. Scott no longer was married to Ms. Scott. (Doc. 133-1, ¶ 9).

## III. DISCUSSION

Pursuant to 5 U.S.C. § 8477(e)(3)(C)(i), a "participant or beneficiary" may bring a civil action to "recover benefits" from the TSP or to enforce statutory rights related to the TSP. For purposes of its motion for summary judgment, the FRTIB assumes that Mr. Scott is a "beneficiary" who may attempt to enforce statutory rights associated with Ms. Scott's TSP plan. (Doc. 133, p. 2, n. 2). The Court makes the same assumption for purposes of resolving the summary judgment motion.

Through this lawsuit, Mr. Scott seeks to enforce his statutory right to notice of Ms. Scott's December 6, 2010 request to borrow money from her TSP account. (*See*

---

[3] Mr. Scott's second amended complaint mentions the state court divorce action. (*See* Doc. 79, pp. 2-5, 11, 17-18). That action is styled *Calvin Scott v. Lucile Scott*, DR-2010-90020.00. The record for the state court action is available on the Alacourt website. The Court takes judicial notice of that record. *See Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (district court properly took judicial notice of documents related to the plaintiff's previous civil action because the documents "were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'") (quoting Fed. R. Evid. 201(b); other internal citations omitted).

5

Doc. 145, p. 2).[4] Federal law permits TSP participants to apply for loans from their TSP accounts. *See* 5 U.S.C. § 8433(g)(1) ("At any time before separation, an employee or Member may apply to the Board for permission to borrow from the employee's or Member's account an amount not exceeding the value of that portion of such account which is attributable to contributions made by the employee or Member."). If a CSRS plan participant like Ms. Scott applies for a loan, then the FRTIB must notify the participant's spouse before the FRTIB may authorize the loan. *See* 5 U.S.C. § 8351(b)(5)(B) ("[A] loan or withdrawal may be approved . . . only after the Executive Director notifies the employee's or Member's spouse that the election or change of election has been made or that the Executive Director has received an application for such loan or withdrawal, as the case may be."); *see also* 5 C.F.R. § 1650.62(b) ("The spouse of a CSRS participant is entitled to notice when the participant applies for an in-service withdrawal. . . .").[5]

---

[4] Mr. Scott does challenge the withdrawals that Ms. Scott made from the TSP account after he and Ms. Scott divorced. (*See generally* Doc. 145).

[5] When FERS participants apply for loans from their TSP accounts, the FRTIB must receive spousal consent before approving the loan. *See* 5 U.S.C. § 8435(e) ("A loan or withdrawal may be made to a married employee or Member . . . only if the employee's or Member's spouse consents to such loan or withdrawal in writing."). The FERS spousal consent provision does not apply to CSRS participants. *See* 5 U.S.C. § 8351(b)(5)(A). Because Ms. Scott was a CSRS participant, not a FERS participant, the spousal consent requirement does not apply to her 2010 loan request. Mr. Scott acknowledges that the legal issue is not spousal consent but spousal notification. (*See* Doc. 145, p. 2) ("[T]he issue in this case is not one of [s]pousal consent, in which is being used to cloud the issue because plaintiff ha[s] not alleged that he was required to provide spousal consent, and instead it [i]s one of the lack of being provided [s]pousal [n]otification of the fact that Lucile Scott applied for and received a $20,000.00 loan on December 6, 2010.").

The FRTIB recognizes that it had to provide notice to Mr. Scott when Ms. Scott applied for a loan from her TSP account on December 6, 2010 because Mr. Scott and Ms. Scott were married then. (Doc. 133-1, ¶ 6). According to an FRTIB benefits analyst, on December 6, 2010, the FRTIB "sent a notice in writing to Mr. Scott informing him that Ms. Scott had requested a loan from her TSP account." (Doc. 133-1, ¶ 7). The FRTIB argues that because it sent the notice to Mr. Scott, the Board fulfilled its statutory obligation such that the Board is entitled to judgment in its favor on Mr. Scott's claim.

In opposition to the FRTIB's summary judgment motion, Mr. Scott asserts that he did not receive a copy of the December 6, 2010 letter, and he argues that the FRTIB cannot prove that he received the notice because the record contains no evidence regarding the manner of delivery (i.e. whether the FRTIB sent the letter by "U.S. Mail, fax[], email[], telegraph[] or FedEx or UPS mail"). (Doc. 145, p. 2; *see also* Doc. 138, pp. 3-4, 7; Doc. 145, pp. 3-4, 7; Doc. 149, pp. 2-3; Doc. 151, pp. 2-3).

With respect to Mr. Scott's contention that he did not receive the December 6, 2010 notice, Mr. Scott has not cited, and the Court has not located, binding authority that states that the FRTIB must ensure that the spouse of a TSP participant receives correspondence from the Board. Absent such a requirement, notice would appear to be complete upon mailing. Mr. Scott has not submitted evidence to contradict the

affidavit testimony that the FRTIB "sent" the December 6, 2010 notice letter to Mr. Scott. (Doc. 133-1, ¶ 8).[6]

Mr. Scott argues that "[h]ad [the FRTIB] sent such a notice registered, or certified with a return receipt, the same way the defendant[']s representative ha[s] chosen to communicate with the plaintiff during the course of this litigation[,] there would not have been a problem communicating with me, and there would not have been [a]n issue about the spousal notification." (Doc. 145, p. 4). The logic of Mr. Scott's argument is undeniable. Indeed, it would be a sound business practice to mail spousal notifications in a manner that would enable the FRTIB to confirm receipt of notice. Nevertheless, absent a legal requirement of a particular manner of delivery, the Court may not impose a duty to use a particular method of delivery.

Moreover, even if the spousal notice were legally deficient, the FRTIB would be entitled to judgment on Mr. Scott's claim because the record contradicts Mr. Scott's contention that the alleged lack of notice enabled Ms. Scott to commit perjury in her state court interrogatory response to a request for information concerning her financial situation. (Doc. 145, p. 7; *see also* Doc. 138, pp. 7-8; Doc. 149, pp. 2, 4; Doc. 151, pp. 2-3). According to Mr. Scott, Ms. Scott "did not want [him] to know

---

[6] The Court notes that in a variety of settings, when notice is required, notice is complete upon mailing. But that is not a uniform rule. *See Umerah v. John Hancock Life Ins. Co.*, 458 Fed. Appx. 880, 881-82 (11th Cir. 2012) (under Florida law, "actual receipt" of notice of cancellation of an insurance policy was not required when policy "state[d] that mailing notice is sufficient"); *Bradley v. Kelly Services, Inc.*, 224 Fed. Appx. 893, 896 (11th Cir. 2007) (court clerk's "mailing of notice is deemed to be notice to a party"); *but see In re Clubhouse Investments, Inc.*, 451 B.R. 626, 635 (Bankr. S.D. Ga. 2010) (generally, under Georgia law, "notice is not complete until it is received") (internal quotation marks and citation omitted).

about her [TSP] withdrawals." (Doc. 145, p. 7). In interrogatory responses that Ms. Scott signed two months after she requested the TSP loan, Ms. Scott stated:

> I currently live paycheck to paycheck. I recently (December 2010) borrowed monies to pay for my daughter's funeral and now to defend myself in a divorce settlement. I borrowed the money from my TSP account . . .

(Doc. 138, pp. 14-15). Ms. Scott explained that she was repaying a number of loans, including the TSP loan. (Doc. 138, p. 14). Thus, contrary to Mr. Scott's contention, Ms. Scott acknowledged that she borrowed money from her TSP account in December 2010; she did not commit perjury in her interrogatory response regarding her financial condition. Because Mr. Scott had actual notice of the TSP loan during the state court divorce proceedings, he can identify no injury that he suffered because of the purported deficiency in FRTIB's December 2010 notice of Ms. Scott's loan application, and there is no basis for the declaratory relief that Mr. Scott requests from the Court. (Doc. 149).

To the extent that Mr. Scott, in his opposition to the FRTIB's motion for summary judgment, seeks relief from the Court's order dismissing his § 1983 due process and ADA claims against Judge Woodroof (*see* Doc. 138, pp. 2, 5, 7-9; Doc. 145, pp. 2, 5, 7-9; Doc. 151, pp. 4-5), the Court denies the request. Mr. Scott may not pursue his claim against Judge Woodroof because the Court does not have subject matter jurisdiction over Mr. Scott's § 1983 claim, and Judge Woodroof is immune from Mr. Scott's ADA claim. (*See* Doc. 131; Doc. 152). To the extent he seeks

9

injunctive relief in the form of an order vacating or amending Judge Woodroof's orders, Mr. Scott must seek such relief in the state court. (*See* Doc. 127, p. 2; Doc. 131, p. 17, n. 14).

## IV. CONCLUSION

For the reasons stated above, the Court finds that there is no genuine issue of material fact, and the FRTIB is entitled to judgment as a matter of law on Mr. Scott's claim. Therefore, the Court grants the FRTIB's motion for summary judgment and denies Mr. Scott's request for declaratory judgment. (Docs. 133, 149). The Court will enter a separate final order.

The Court asks the Clerk to please mail a copy of this memorandum opinion to Mr. Scott.

**DONE** and **ORDERED** this June 19, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE